### In re FEUCHTWANGER.

(Supreme Court, Appellate Division, First Department. June 24, 1910.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT OF ATTORNEY—GROUNDS.

Appropriation by an attorney of money paid to him by his client for the expenses of a title insurance policy was ground for his disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55–62; Dec. Dig. § 44.*]

Proceeding to discipline Sigmund Feuchtwanger, an attorney. Respondent disbarred.

See, also, 131 App. Div. 937, 116 N. Y. Supp. 1135.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

Einar Chrystie, for petitioner.
John L. Lockwood, for respondent.

INGRAHAM, P. J. The professional misconduct charged against this respondent is the appropriation by him of the sum of $182.50 paid to the respondent to defray the charges of a title insurance company for a policy of insurance upon certain property purchased by his client. The referee has found that in the summer of 1906 one Deffaa purchased the premises No. 543 Sixth avenue, and retained this respondent to act as his attorney and look after his interest in the transaction. The respondent, who had been a member of the bar for 22 years, was instructed by Deffaa to obtain a policy of insurance from the Lawyers' Title Insurance Company; that company having apparently examined the title to the property and agreed to insure it. Aft-

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er the title had been closed, Deffaa gave to the respondent the sum of $182.50, the amount of the bill rendered by the title company for its services, and Deffaa testified that this sum was paid to the respondent for the purpose of paying the fee of the title company. The respondent denies that anything was said at the time the money was paid about paying this fee, although he admits that the bill of the title company was for that amount, and he asked for that specific sum because he knew what the title company would charge. The referee found that after the title had been closed, on July 26, 1906, Deffaa gave the respondent the sum of $182.50 to pay the title company for its services, which was received by the respondent for such purpose. After the respondent had received this money he rendered a bill to Deffaa for $60 for professional services, which Deffaa paid. Thereupon the respondent appropriated the $182.50 to his own use, and failed to pay the title company the amount of its bill, and as a result his client did not receive from the title company the policy of insurance to which he was entitled. Thereafter the title company commenced an action against the respondent to recover the amount of its fee for examining the title and insuring it, and recovered a judgment against him for the amount, which judgment the title company was unable to collect. Deffaa, not receiving his policy of insurance, asked the respondent for it, when the respondent told him that it had been mislaid in moving his office, but that it was somewhere on his desk, and he would find and deliver it; but it was not delivered.

Finally, in November, 1908, over two years after the respondent had received the money, Deffaa filed a complaint against the respondent with the Grievance Committee of the Bar Association, and on November 13, 1908, the respondent was notified that such a complaint had been made. The respondent thereupon went to Deffaa, delivered to him two promissory notes, of $100 each, secured by a chattel mortgage, whereupon Deffaa wrote the Bar Association, withdrawing the charges against the respondent. The respondent failed to meet these notes when due, and they were protested; he stating that he did not pay the notes because the association refused to withdraw the charges. In the meantime this proceeding had been instituted. Deffaa was out the sum of $182.50. He had received no policy of insurance. The respondent had appropriated the money, refused to pay the title company, and had refused to pay the notes that he had given to his client, and, although this proceeding had been instituted, still showed no intention of performing his obligations to his client, and apparently made no effort to restore to his client or to pay the title company the money that he had thus wrongfully appropriated. This proceeding having been brought on before the court, an order of reference was entered, and on November 27, 1909, while the proceedings before the referee were pending, the respondent finally paid to the title company money sufficient to enable him to obtain the policy of insurance from the title company and delivered it to his client.

Whether this was a technical conversion of the money or not is quite immaterial. It was clearly a misappropriation by the respondent of his client's money, paid to him for a particular purpose, and which

for years he managed to retain without making the slightest effort to restore it. The attempt of the respondent to make it appear that this money was paid to him for any other purpose than to pay the charge of the title company is an evident attempt to deceive the referee and this court. It was the exact amount of the bill rendered by the title company for its services, and in addition he presented to his client a bill for his services and received from his client the amount of that bill. The respondent has been able to successfully resist the claim of the title company for the money, because nothing could be collected from him on the judgment obtained by the title company, and it was only after these proceedings had been instituted, and the time was approaching when his disbarment was certain, that he showed the slightest disposition to restore the money of his client that he had thus misappropriated. He never had the right to apply this money to his own use. It was money paid to him for a particular purpose, namely, to pay the title company to enable his client to obtain a policy of insurance. His examination before the referee shows how oblivious he was of the obligation that he owed to his client, and the enormity of his offense in misappropriating his client's money which had been intrusted to him for a specific purpose. And after all this had occurred he induced his client to accept two promissory notes as a discharge of his obligation, and to effect a withdrawal of the charges against him, which promissory notes he failed to pay when they became due.

There is not the slightest excuse presented for this most flagrant breach of trust; not the slightest regret shown by this respondent for the offense he has committed; not the slightest indication that the respondent ever made any effort to repair the wrong that he had done until the time was approaching when his disbarment was threatened. The record discloses that the respondent would never have repaid this money, had it not been that by the repayment he hoped to escape the penalty for his misconduct. There is here nothing to palliate the offense of which the referee has quite justly convicted the respondent, and if common honesty, let alone a sense of honor, is to be required of members of the profession, this court cannot excuse this most flagrant disregard of the duty that an attorney owes to his client. This is not a mistake, nor an inadvertence. It is not even a fault which an attorney has committed, but which he has endeavored to repair. It is an unjustifiable appropriation by an attorney of his client's money without the slightest excuse, and with no effort to replace it except to escape disbarment. In such a case we have no alternative, if attorneys are required to be honest, but to inflict the penalty of disbarment; and it is so ordered.

Respondent disbarred. All concur.